NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

CHASE GARRETT ALTER, *Appellant.*

No. 1 CA-CR 15-0716
FILED 1-4-2017

Appeal from the Superior Court in Maricopa County
No.  CR2014-156813-001
The Honorable Dean M. Fink, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jillian Francis
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Carlos Daniel Carrion
*Counsel for Appellant*

_____

## MEMORANDUM DECISION

Judge Peter B. Swann delivered the decision of the Court, in which Presiding Judge Andrew W. Gould and Judge Patricia A. Orozco (Retired) joined.

_____

**S W A N N**, Judge:

**¶1**        Chase Garrett Alter was convicted of one count of possession of marijuana after a bench trial.  He appeals, arguing that his possession was lawful under the Arizona Medical Marijuana Act ("AMMA").  We hold that the court, sitting as the finder of fact, acted within its discretion in determining that Alter failed to meet his burden to prove that the marijuana he was transporting in vacuum-sealed bags was not "useable marijuana" under the AMMA.  We therefore affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**        On the afternoon of August 8, 2014, Officer Pledger was patrolling when he stopped Alter's car for an unrelated vehicular violation.  While talking to Alter as Alter sat in his vehicle, the officer smelled marijuana.  Alter admitted he had a small quantity of marijuana, and he gave Ofc. Pledger a bag containing 0.01 ounces of marijuana and his valid AMMA card, which also allowed him to cultivate marijuana.   Ofc. Pledger determined that Alter's driver's license was suspended and impounded the vehicle in accordance with police procedure.  While searching the vehicle, Ofc. Pledger found five bags of marijuana weighing 5.8 ounces.

**¶3**        Alter was indicted for possession of marijuana.  The state designated the charge a class 1 misdemeanor and requested a bench trial.  Alter agreed.  He was found guilty, and now appeals.

## DISCUSSION

**¶4**        A.R.S. § 36-2811(B) provides immunity from prosecution for possession of marijuana "if the registered qualifying patient does not possess more than the allowable amount of marijuana."   The allowable amount is 2.5 ounces.  A.R.S. § 36-2801(1)(a)(i).  "In claiming protection under this statutory immunity, it is a defendant's burden to 'plead and prove,' by a preponderance of the evidence, that his or her actions fall

within the range of immune action." *State v. Fields ex rel. Cty. of Pima*, 232 Ariz. 265, 269, ¶ 15 (2013).

**¶5**         Alter's sole argument on appeal is that the court misinterpreted the AMMA's language concerning the amount of marijuana he was allowed to possess.  He contends that because the marijuana in question was "wet," it was not "useable" and therefore not subject to the 2.5-ounce limit.  The state counters that because Alter filed no pretrial motion to dismiss based on statutory construction, the only issue on appeal is the trial court's implicit factual finding that the marijuana he possessed was useable.  We agree with how the state frames the issue: the record contains no legal ruling to demonstrate that the trial court relied on an incorrect construction of the AMMA in convicting Alter.[1]  The issue, therefore, is whether the court could properly have rejected the evidence Alter produced to demonstrate that the marijuana he possessed was not useable.  "When the evidence supporting a verdict is challenged on appeal, an appellate court will not reweigh the evidence.  The court must view the evidence in the light most favorable to sustaining the conviction, and all reasonable inferences will be resolved against a defendant." *State v. Lee*, 189 Ariz. 590, 603 (1997).

**¶6**         An "allowable amount of marijuana" is up to 2.5 ounces of "useable marijuana" in addition to "[m]arijuana that is incidental to medical use, but is not usable marijuana."  A.R.S. § 36-2801(1)(a)(i), (1)(c). "Useable marijuana" is the "dried flowers of the marijuana plant . . . but does not include the seeds, stalks and roots."  A.R.S. § 36-2801(15). "Marijuana that is incidental to medical use, but is not usable marijuana . . . , shall not be counted toward a qualifying patient's . . . allowable amount of marijuana."  A.R.S. § 36-2801(1)(c).  If, as here, the cardholder is authorized to cultivate marijuana, the cardholder may have up to 12 marijuana plants.  A.R.S. § 36-2801(1)(a)(ii).  A cardholder may give marijuana to another cardholder provided nothing of value is given in exchange and the giver does not knowingly cause the recipient to possess more than 2.5 ounces.  A.R.S. §§ 36-2801(1)(a)(i); -2811(B)(3).

**¶7**         Alter testified that he knew of the 2.5-ounce limitation, and knew that a single marijuana plant could produce anywhere from a few grams to pounds of useable marijuana.  He also knew that he could not control the amount plants produce.  He testified that once a plant has finished growing, it must be dried and cured, which takes four to eight

---

[1]     Alter presented his statutory construction argument as part of his closing argument, and the trial court then took the verdict under advisement.  The final verdict did not include the court's reasoning.

weeks. To deal with the quantity limitation, Alter testified that he staggers his harvests and stops the drying and curing process by vacuum-sealing the marijuana.

¶8        Two days before encountering Ofc. Pledger, Alter harvested marijuana. After starting the drying process, he realized that the plants would probably produce more than the allowed amount. He put the marijuana into vacuum-sealed bags. When he encountered Ofc. Pledger, Alter was transporting the excess marijuana to two other cardholders. At the police station, Ofc. Pledger opened the vacuum seal on the bags and weighed the marijuana in them along with the marijuana Alter initially handed him. The six bags contained a total of 5.81 ounces of marijuana. Both Alter and Ofc. Pledger testified that the plants were wet when Alter was arrested.

¶9        The state argues that Alter has the burden to show compliance with the AMMA and that to do so he must produce expert testimony on the quantity of marijuana. While we disagree that expert testimony is required as a matter of law, Alter's failure to present such testimony left the court to evaluate his credibility as the sole source of proof for his defense. Here, the court did not articulate the reasons for its verdict, and it was not required to do so. At sentencing, however, the trial court commented that it "was not swayed by the argument that the manner in which the marijuana was packed and, therefore, wet, exempted it from the statute."

¶10        The court was presented with a mixed question of fact and law. The legal question was whether marijuana in excess of the 2.5-ounce limit was "useable." The factual question was whether it was sufficiently "dried" to qualify as useable. Based on the evidence before it, the court could reasonably have concluded that marijuana that has been harvested, is in the process of being cured and was sufficiently cured to warrant its delivery to others was, in fact, "useable." Under our standard of review, we have no basis upon which to question the superior court's verdict.

## CONCLUSION

¶11        For the foregoing reasons, we affirm Alter's conviction.

